UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CLIFFORD J. CONYERS,

                                        Plaintiff,

        vs.                                                1:25-CV-1500
                                                           (MAD/MJK)
UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA LOCAL UNION,
JAMES MARGIOTTA, CHRISTOPHER DUGAN,
and MICHELLE GUYNUP,

                                        Defendants.

---

APPEARANCES:                              OF COUNSEL:

CLIFFORD J. CONYERS
Troy, New York
Plaintiff, *pro se*

KRAKOW, SOURIS & LANDRY LLC        THOMAS HENRY, ESQ.
90 Canal Street, 4th Floor
Boston, Massachusetts 02114
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Clifford J. Conyers ("Plaintiff") commenced the action *pro se* in New York State Supreme

Court, Rensselaer County, on October 23, 2024. *See* Dkt. No. 2. On October 24, 2025, United

Brotherhood of Carpenters and Joiners of America Local Union (the "Union"), James Margiotta,

Christopher Dugan, and Michelle Guynup (collectively, "Defendants") removed this action to

federal court. *See* Dkt. No. 1. The state court complaint alleges that Defendants wrongly

demoted Plaintiff and terminated his Union membership after failing to notify him that he was in

1

arrears on Union dues.  *See* Dkt. No. 2.  The Court discerns the following five claims from the state court complaint: (1) breach of the duty of fair representation; (2) retaliation; (3) breach of contract; (4) age discrimination; and (5) race discrimination.  *See id.*

Plaintiff filed a motion to remand on November 3, 2025, *see* Dkt. No. 10, which Defendants opposed on November 13, 2025, *see* Dkt. No. 12.  Plaintiff filed a reply on November 26, 2025.  *See* Dkt. No. 15.

On the same day they opposed the motion to remand, Defendants filed a motion to dismiss the complaint.[1]  *See* Dkt. No. 13.  Plaintiff opposed that motion on November 26, 2025, *see* Dkt. No. 17, and Defendants filed a reply on December 3, 2025, *see* Dkt. No. 18.  Plaintiff moved to strike Defendants' reply, and the parties have fully briefed that motion.  *See* Dkt. Nos. 20, 22, 30. On the same day that Plaintiff filed his motion to strike the reply, he filed a sur-reply opposing the motion to dismiss without the Court's leave.  *See* Dkt. No. 19.  Defendants moved to strike that sur-reply, and the parties have fully briefed that motion.  *See* Dkt. Nos. 21, 29, 35, 36.

Separately, on November 26, 2025, and January 14, 2026, Plaintiff filed two respective motions to strike Defendant Guynup from the case caption.  *See* Dkt. Nos. 16, 27.  On January 22, 2026, Defendants filed a letter arguing that those motions—and several of Plaintiff's other submissions—are duplicative.  *See* Dkt. No. 34.

Accordingly, the following six motions are now before the Court: (1) Plaintiff's motion to remand; (2) Defendants' motion to dismiss; (3) Plaintiff's first motion to strike Defendant Guynup from the case caption; (4) Plaintiff's motion to strike Defendants' reply in support of their motion to dismiss; (5) Defendants' motion to strike Plaintiff's sur-reply in opposition to the motion to

---

[1] Only Defendants Margiotta, Dugan, and the Union are listed as parties to the motion to dismiss. *See* Dkt. No. 13-1 at 8.

2

dismiss; and (6) Plaintiff's second motion to strike Defendant Guynup from the case caption. For the following reasons, the motion to remand is denied, the motion to dismiss is granted, the motions to strike docket filings are denied, and the motions to strike Defendant Guynup from the case caption are denied as moot.

## II. BACKGROUND

The following factual summary is derived from Plaintiff's state court complaint and its attachments. *See* Dkt. No. 2. Plaintiff identifies himself as a journeyman and former member of the Union, which "represent[s] skilled carpenters in the New York Capital region, and the surrounding counties." *Id.* at 1-2. He does not claim to be an employee of the Union. On or about May 25, 2023, believing he was still a Union member, Plaintiff called the Union regarding payment of dues. *See id.* at 1. He spoke with Defendant Guynup, an administrative assistant at the time, who told him he was "blocked" from paying dues. *Id.* Plaintiff allegedly told Defendant Guynup he wanted to file a complaint. *See id.* at 6. Defendant Guynup said she would discuss the issue with Defendants Dugan and Margiotta, who identify themselves as "Union officers[,]" Dkt. No. 1 at ¶ 4, and told Plaintiff to call back in two days, *see* Dkt. No. 2 at 1.

Plaintiff called back as instructed, and Defendant Guynup told him he "was blocked because [he] was late on [his] Union dues so apply as a first-time apprentice, a demotion." *Id.* at 2. Plaintiff claims he never received any notice that he had repeatedly failed to pay his dues or that another failure to pay would end his membership. *See id.* at 2-3. He also asserts that Defendants never gave him a chance to explain his failure to pay. *See id.* at 3. The complaint appears to allege that Plaintiff missed six monthly payments due to financial hardship. *See id.* at 2-3.

Quoted in and attached to the complaint is an excerpt from the Union's constitution, which states as follows:

> A member who owes a Local Union five months' dues shall be notified by mail, in Address Correction Requested envelopes, at the last known address by the Financial Secretary not later than the 15th day of the sixth month of said arrearage.  Unless dues are paid by the end of the sixth month, the member's name shall be stricken from the list of membership without a vote of the Local Union. Any notice required to be provided under this Section may be sent to the member by electronic mail instead provided that the member has furnished to the Local Union or Council a valid electronic mail address.

*Id.* at 3-4, 14.  Plaintiff, who states he is African American and fifty-eight years old, claims that "[u]sually, white guys go 8 months to a year or two years without paying union dues without being stricken in membership or demoted." *Id.* at 3, 9.  He also asserts that "[t]he union wanted to change [his] status because [he] was an older member, and they wanted to have more younger people to enter so they could play [sic] different benefits." *Id.* at 9.  He claims the Union acted with "ulterior motive[,]" "in bad faith[,]" and "arbitrarily and capriciously" to terminate his membership.  *Id.* at 4, 6.  He also alleges that Defendants retaliated against him for telling Defendant Guynup he wanted to file a complaint.  *See id.* at 6-7.

Plaintiff called a "worker's hotline" to discuss the dispute.  *Id.* at 6-7.  The hotline representative advised him to file a grievance with the Union. *See id.* at 7.  It is unclear, on the face of the complaint, whether Plaintiff actually filed a grievance.  Plaintiff did file a charge of race and age discrimination and retaliation with the Equal Employment Opportunity Commission, which dismissed the charge and issued Plaintiff a right-to-sue letter on July 16, 2024. *See id.* at 7, 19-20.  Because his membership ended, Plaintiff has allegedly "lost wage opportunities, benefits that would have been owed to [him] and other opportunities that the union offers." *Id.* at 8.

4

**III. DISCUSSION**

**A.    Legal Standards**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)).  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted), and present claims that are "plausible on [their] face[,]" *id.* at 570.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  The Court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth does not extend to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  The Court may consider the facts presented in the pleading, documents attached to the pleading or incorporated by reference, and documents that are "integral" to the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

*Pro se* litigants' filings should "'be liberally construed'" and "'held to less stringent standards'" than attorney-drafted submissions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, this Court must construe Plaintiff's filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and emphasis omitted).

**B.     Plaintiff's Motion to Remand**

The Court first addresses Plaintiff's motion to remand, which directly bears upon whether the Court has jurisdiction to adjudicate this matter. *See* Dkt. No. 10.

"A defendant may remove to federal court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *City of Syracuse v. Loomis Armored US, LLC*, No. 5:11-CV-744, 2011 WL 6318370, *2 (N.D.N.Y. Dec. 15, 2011) (quoting *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 309-10 (2d Cir. 2005)); *see* 28 U.S.C. § 1441(a). A defendant must file a notice of removal within thirty days after receiving "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," or "service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). "[O]nce a case has been removed, it must be remanded '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Loomis Armored*, 2011 WL 6318370, at *2 (quoting *Shapiro*, 412 F.3d at 310); *see* 28 U.S.C. § 1447(c). The removing party "bears the burden of establishing that removal is proper." *Loomis Armored*, 2011 WL 6318370, at *2 (citing *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004)). "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

6

### 1. *Removal Procedure*

First, Plaintiff argues that Defendants defaulted in state court by failing to answer the complaint within twenty days, which precludes removal to federal court. *See* Dkt. No. 10 at 2; Dkt. No. 10-2 at 2-4; Dkt. No. 15 at 2. All Defendants, except Defendant Guynup, argue that they were served with the state court complaint on or about September 26, 2025, more than 300 days after Plaintiff filed the state court complaint. *See* Dkt. No. 12 at 8. The federal docket contains an affidavit of service corroborating such. *See* Dkt. No. 10-1. The affidavit also states that Defendant Guynup no longer works for the Union and was not served. *See id.* at 2. Defendants filed their notice of removal on October 24, 2025, *see* Dkt. No. 1, twenty-eight days after service.

If a case is timely removed to federal court before a default judgment is entered in state court, the removal is effective. *See Tarbell v. Jacobs*, 856 F. Supp. 101, 104 (N.D.N.Y. 1994); *Eckert v. Paul*, No. 1:24-CV-1203, 2025 WL 491634, *5, *7 (W.D.N.Y. Jan. 7, 2025). Based on the record, it is unclear whether Defendants defaulted in state court. A search of the case number and parties' names in New York's case filing system yields no results. Defense counsel avers that, as of October 14, 2025, the only filing of record on the state court docket was a motion from Plaintiff. *See* Dkt. No. 1-2 at ¶ 4. On October 20, 2025, the state court judge's chambers "confirmed that Plaintiff had submitted an affidavit of service regarding Defendant Guynup that stated he was unable to locate and serve her." *Id.* at ¶ 7; Dkt. No. 1-3. Plaintiff has not otherwise claimed that he obtained a default judgment against Defendants in state court. Thus, the Court is satisfied that as to Defendants Dugan, Margiotta, and the Union, who all consented to removal, *see* Dkt. No. 1 at ¶ 29, removal was procedurally proper. As for Defendant Guynup, Plaintiff concedes that she was not joined or served. *See* Dkt. No. 15 at 3. Therefore, her consent is not required. *See* 28 U.S.C. § 1446(b)(2)(A).

Based on the record, removal was timely and procedurally proper.

### 2. Subject Matter Jurisdiction

Defendants assert federal question jurisdiction as the basis for removal. *See* Dkt. No. 1.

District courts have federal question jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's remand motion

argues that all his claims arise under New York law, which precludes federal question

jurisdiction.[2] *See* Dkt. No. 10-2 at 1-3 ("Because there is no diversity of citizenship and no valid

federal claim, this Court lacks subject matter jurisdiction"). Specifically, he argues that the duty

of fair representation claim arises under "New York common law and labor principles[,]" and the

age and race discrimination claims arise under New York Executive Law § 296, also known as

the New York Human Rights Law ("HRL"). *Id.* at 1-2. He does not identify specific legal

authority for the retaliation or breach of contract claims, but broadly asserts that they arise under

state law.[3] *See id.* at 1-3. Defendants argue that federal question jurisdiction exists because

---

[2] In his opposition to Defendants' motion to dismiss, Plaintiff contradicts himself and apparently tries to change the legal authority for his claims. He contends that his race discrimination claim arises under Title VII of the Civil Rights Act of 1964, a federal statute. *See* Dkt. No. 17 at 1, 3. He also argues that his breach of contract and duty of fair representation claims arise under the Labor Management Relations Act of 1947 ("LMRA"), his retaliation claim arises under the federal Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), and his age discrimination claim arises under both the LMRDA and LMRA. *See id.* In a separate filing approximately three weeks later, he attempts to change his claims' legal authority again. There, he claims the duty of fair representation claim arises under the LMRDA and NLRA, the retaliation claim arises under 42 U.S.C. § 1983, the breach of contract claim arises under New York common law, and the age and race discrimination claims arise under the New York Human Rights Law ("HRL") and 42 U.S.C. § 1981. *See* Dkt. No. 19 at 1. He also mentions separate claims under Title VII and "LMRDA/state law[.]" *Id.* at 1-2. Because Plaintiff makes these contradictory arguments in response to Defendants' motion to dismiss, rather than in his remand motion, the Court still considers Defendants' arguments for removal.

[3] Plaintiff's remand motion and reply argue that Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA") do not apply and cannot support federal question jurisdiction. *See* Dkt. No. 10-2 at 3; Dkt. No. 15 at 2. Defendants do not rely on those statutes to

Plaintiff's claims are pre-empted by the federal Labor Management Relations Act of 1947 ("LMRA") and National Labor Relations Act of 1935 ("NLRA").  *See* Dkt. No. 1.

### a. *Duty of Fair Representation*

Plaintiff alleges that Defendants breached their duty of fair representation by failing to notify him of his unpaid dues and potential expulsion from Union membership, and ignoring him when he protested his removal from membership.  *See* Dkt. No. 2 at 2-3.  The parties disagree over the legal authority for this claim.  *Compare* Dkt. No. 10-2 at 1 (Plaintiff asserting the claim "under New York common law and labor principles"), *with* Dkt. No. 12 at 22-23 (Defendants characterizing the duty of fair representation as a court-created doctrine derived from the NLRA, a federal statute).

New York's Civil Service Law discusses a duty of fair representation to public employees, *see* N.Y. CIV. SERV. LAW § 209-a, but Plaintiff does not allege that he is a public employee, *see* Dkt. No. 2.  The NLRA specifically covers private-sector employees, *see Lagoy v. Corr. Med. Servs.*, 358 F. Supp. 2d 58, 62 (N.D.N.Y. 2005) (citations omitted), and is the root of the judicially created federal duty of fair representation, *see In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 377-78 (S.D.N.Y. 2024).  The NLRA "imposes on labor unions 'a statutory obligation to serve the interests of all [their] members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct' in the context of obtaining and enforcing a [labor contract]."  *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); citing *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017)).

---

support removal.  *See* Dkt. No. 12 at 15 ("Defendants never sought to remove Plaintiff's [c]omplaint based on Title VII or the ADEA").

Besides a broad reference to "New York common law and labor principles[,]" Plaintiff has not cited any authority showing a duty of fair representation claim is available to him under New York law.  Dkt. No. 10-2 at 1.  In an exercise of special solicitude, the Court searched for such authority.  It found none.  Thus, the Court is satisfied that the NLRA, a federal statute, is the source of Plaintiff's ability to sue for a breach of the duty of fair representation.[4]

The Supreme Court has recognized that, where an essential element of a plaintiff's state law claim depends on federal law, federal question jurisdiction may be triggered and permit removal.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-16 (2005).  In *Grable*, the defendant removed a state law quiet title action to federal court.  *See id.* at 311.  The plaintiff claimed the Internal Revenue Service failed to give proper notice of the seizure of its property, as required by federal law.  *See id.* at 314-15.  The defendant argued that a federal question was presented "because the claim of title depended on the interpretation of the notice statute in the federal tax law."  *Id.* at 311.  The Supreme Court agreed with the defendant, noting that "[w]hether [the plaintiff] was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in this case."  *Id.* at 315.

Here, the presence of federal jurisdiction is even clearer.  Federal law not only provides an essential element of Plaintiff's duty of fair representation claim; it is the legal authority for such a claim.  Although Defendants frame this question as a pre-emption issue, *see* Dkt. No. 12 at 22-25,

---

[4] The New York State Labor Relations Act (also known as the State Employment Relations Act, or "SERA"), *see* N.Y. LAB. LAW §§ 700-18, covers certain private-sector employees and was recently amended to remove its exception for NLRA-covered individuals, although the amendment has been challenged, *see Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, No. 25-CV-5311, 2025 WL 3295071, *1 (E.D.N.Y. Nov. 26, 2025).  The Court could not locate any authority showing a cause of action for breach of the duty of fair representation available to Plaintiff under the SERA.

the Court construes this claim as independently arising under federal law.  As such, federal question jurisdiction supports its removal.

### b.  *Retaliation and Breach of Contract*

Defendants argue that the rest of Plaintiff's claims are pre-empted by § 301 of the LMRA, and therefore properly removed under the doctrine of "complete pre-emption."  Dkt. No. 12 at 25-26.  In his remand motion, Plaintiff maintains that all his claims arise under state law, are not pre-empted by any federal law, and cannot be properly removed.[5]  *See* Dkt. No. 10 at 3 ("No federal cause of action is pled"); Dkt. No. 10-2 at 4 ("Plaintiff's claims are not preempted by federal labor law"); *see also* Dkt. No. 15 at 4.

Although "removal generally is not permitted simply because a defendant intends to defend the case on the basis of federal preemption[,]" the "complete pre-emption" doctrine "provides 'that any claim based on preempted state law is considered a federal claim arising under federal law.'"  *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (quoting *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232 (2d Cir. 1997)); *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).  According to the Supreme Court, this doctrine "is applied primarily in cases raising claims pre-empted by § 301 of the LMRA[,]" *Caterpillar*, 482 U.S. at 393, the same provision that Defendants invoke, *see* Dkt. No. 1 at ¶¶ 18-21.

Section 301(a) states as follows:

---

[5] Without analysis, Plaintiff's remand motion cites three cases for the proposition that none of his claims are subject to complete pre-emption under federal law.  *See* Dkt. No. 10 at 3 (citing *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters, Loc. Union No. 174*, 598 U.S. 771 (2023); *Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93 (1991); *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490 (2d Cir. 2023)).  *Glacier* discusses *Garmon* pre-emption, which is distinct from complete pre-emption and is not invoked here.  *See Glacier*, 598 U.S. at 777.  *Wooddell*, as cited herein, demonstrates why complete pre-emption *does* apply in this case.  *See Wooddell*, 502 U.S. at 98-103.  Finally, *Buono* deals with express pre-emption, which is different from complete pre-emption and is not part of Defendants' removal argument.  *See Buono*, 78 F.4th at 496-502.

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a); *see Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019). The provision "'governs claims founded directly on rights created by [labor contracts], and also claims substantially dependent on analysis of a [labor contract].'" *Whitehurst*, 928 F.3d at 206 (quoting *Caterpillar*, 482 U.S. at 394). It extends to suits against unions by individual union members. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 98-103 (1991).

Complete pre-emption applies when resolution of the plaintiff's state law claims is "'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a [labor contract.]" *Whitehurst*, 928 F.3d at 206-07 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985)); *see Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). However, when "a plaintiff covered by a [labor contract] asserts 'legal rights *independent* of that agreement,' preemption does not occur." *Whitehurst*, 928 F.3d at 207 (quoting *Caterpillar*, 482 U.S. at 396). "A state-law claim is 'independent' when resolving it 'does not require construing the [labor contract,]'" *id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)), and a court's mere consultation of a labor contract does not trigger complete pre-emption, *see id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994); *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001)). Union constitutions are considered contracts within the purview of § 301. *See Wooddell*, 502 U.S. at 100.

12

Plaintiff's retaliation claim alleges that Defendants terminated his union membership because he told Defendant Guynup he wanted to file a complaint. *See* Dkt. No. 2 at 6-7. Defendants assert that the Union constitution creates Plaintiff's right to file a complaint or grievance. *See* Dkt. No. 12 at 25. Plaintiff argues that his claims do not require interpretation of any labor contract. *See* Dkt. No. 15 at 4. However, through a series of cross-referenced sections, the Union constitution provides a "charges" procedure regarding improper conduct. Dkt. No. 13-3 at 72-82. Construing the cross-referenced sections supports the proposition that Plaintiff was entitled to file a complaint for a variety of possible reasons, including violation of the Union "Obligation[,]" which contains a promise to abide by the Union constitution. *See id.* at 72-82, 98.

Under New York's HRL, a plaintiff alleging union retaliation must plead participation in a protected activity, an "adverse union action[,]" and "a causal connection between the protected activity and the union's actions." *Cruz v. Loc. 32BJ*, No. 22-CV-3068, 2024 WL 4357036, *20-21 (S.D.N.Y. Sept. 30, 2024) (citation and internal quotation marks omitted). The Court construes Plaintiff's stated intent to file a grievance as the alleged protected activity. Plaintiff has not specified any authority outside the Union constitution that would guarantee him an opportunity to file an internal grievance. He predicates his retaliation claim on his exercise of rights under an interpretation of the Union constitution, rather than his rights under a statute or other source of law. Thus, the retaliation claim is inextricably intertwined and substantially reliant upon the Union constitution. The claim is therefore pre-empted under § 301. *Cf. Carvalho v. Int'l Bridge & Iron Co.*, No. 3:99-CV-605, 2000 WL 306456, *3-4 (D. Conn. Feb. 25, 2000) (finding no pre-emption of a plaintiff's claim of retaliation for exercising his rights under Connecticut law, because the plaintiff's rights under that law were "independent of" his rights under the applicable labor contract).

The breach of contract claim alleges that Defendants violated the Union constitution by failing to notify Plaintiff of his unpaid dues and impending termination of Union membership. *See* Dkt. No. 2 at 7-8.  As discussed above, the Union constitution guarantees members notice by mail or email if they fall five months behind in Union dues, as well as a warning that failure to pay by the end of the sixth month will end their membership.  *See id.* at 14.  Because the Union constitution is "[t]he source of [Plaintiff's] express contractual rights[,] . . . [r]esolution of the merits of [the] breach of contract claim would necessarily require the Court to interpret the terms and provisions" of the Union constitution.  *Carvalho*, 2000 WL 306456, at *8 (citations omitted).  In other words, Plaintiff's breach of contract claim is inextricably intertwined with and substantially dependent upon the Union constitution because that document is the contract that Defendants allegedly breached.  *See id.*; *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012) (citing *Avedisian v. Quinnipiac Univ.*, 387 Fed. Appx. 59, 62-63 (2d Cir. 2010) (summary order)) (other citation omitted) ("Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a [labor contract], plaintiff's claims must be construed as preempted by LMRA § 301").  Thus, the breach of contract claim is pre-empted by § 301.

### c.   *Age and Race Discrimination*

Plaintiff appears to allege that Defendants discriminated against him on the basis of race and age by arbitrarily and capriciously terminating his membership without following the notice requirements in the Union constitution.  *See* Dkt. No. 2 at 8-11.  Although Plaintiff invokes the Union constitution, *see id.*, and the discrimination claims require the Court to reference the Union constitution, they do not depend on an interpretation of the Union constitution's terms.

14

Discrimination claims require allegations of adverse action because of a protected characteristic. *See, e.g.*, *Cruz*, 2024 WL 4357036, at \*18-19; *Dillard v. SEIU Loc. 32BJ*, No. 15-CV-4132, 2015 WL 6913944, \*4, \*7, \*9 (S.D.N.Y. Nov. 6, 2015).  To resolve the merits of these claims, the Court must determine whether Plaintiff alleged termination of his membership because of his race or age.  The Court can make that determination without construing the Union constitution's terms.  Because resolution of Plaintiff's discrimination claims "will depend upon the 'actions, statements and motivations' of the Union," rather than interpretation of the Union constitution, complete pre-emption does not apply to the discrimination claims.  *Cruz v. SEIU Loc. 32BJ*, No. 19-CV-11836, 2021 WL 3604661, \*5 (S.D.N.Y. Aug. 12, 2021) (citing *Rodriguez v. Newmark & Co. Real Est.*, No. 19-CV-9607, 2020 WL 3073259, \*3 (S.D.N.Y. June 10, 2020)); *see also Int'l Ass'n of Machinists & Aerospace Workers, Loc. Lodge No. 967 ex rel. McCadden v. Gen. Elec. Co.*, 713 F. Supp. 547, 554 (N.D.N.Y. 1989) (holding that a state law age discrimination claim was not pre-empted because "the heart of the plaintiff's claims  . . . [arose] under the laws of the State of New York and [were] not generally of the sort which may be negotiated away at a bargaining table"); *cf. Whitehurst*, 928 F.3d at 209 (holding that § 301 pre-empted the plaintiff's discrimination claims because those claims expressly relied on the union's "bad faith interpretation" of its collective bargaining agreement).

Alternatively, Defendants argue that Plaintiff's state law discrimination claims are pre-empted by the Union's duty of fair representation under the NLRA.  *See* Dkt. No. 1 at ¶¶ 14-17; *see also* Dkt. No. 13-1 at 17.  Plaintiff does not address this argument.  As explained above, the duty requires labor unions to, *inter alia*, "'serve the interests of all [their] members without hostility or discrimination[.]'"  *Unite Here*, 740 F. Supp. 3d at 377 (quoting *Vaca*, 386 U.S. at 177; citing *Figueroa*, 864 F.3d at 229).

15

Prior to 2017, district courts in this Circuit regularly found that the duty of fair representation subsumed and pre-empted state law discrimination claims against labor unions. *See, e.g.*, *Dillard*, 2015 WL 6913944, at \*9 (quoting *Langford v. Int'l Union of Operating Eng'rs, Loc. 30*, 765 F. Supp. 2d 486, 507 (S.D.N.Y. 2011)) (other citations omitted); *Snay v. U.S. Postal Serv.*, 31 F. Supp. 2d 92, 99-100 (N.D.N.Y. 1998); *Cole v. Cent. Park Sys., Inc.*, No. 09-CV-3185, 2010 WL 3747591, \*8 (E.D.N.Y. Sept. 20, 2010); *Cabrera v. City of New York*, 436 F. Supp. 2d 635, 646 (S.D.N.Y. 2006). Under that framework, district courts reasoned that "if the state claim '[created] no new rights for an employee and [imposed] no new duty on a union not already clearly present under existing federal labor law,' it [was] preempted." *Snay*, 31 F. Supp. 2d at 99 (citation omitted).

However, in its 2017 *Figueroa* decision, the Second Circuit cautioned against summarily finding HRL claims subsumed and pre-empted by the duty of fair representation. *See Figueroa*, 864 F.3d at 224 ("[W]e hold that the NLRA's duty of fair representation does not necessarily preempt the [HRL], even when a labor organization is acting in its capacity as a collective bargaining agent"). *Figueroa* calls for a conflict pre-emption framework to decide whether HRL discrimination claims are subsumed by the duty of fair representation. *See id.* at 232. Through that lens, courts analyze "whether it is either impossible for a private party to comply with both the NLRA's duty of fair representation and the [HRL], or whether the [HRL] stands as an obstacle to the execution of Congress's intent as expressed in the NLRA's duty of fair representation." *Id.* at 234 (citation omitted). The Second Circuit recognized that the HRL "serves the same purpose of prohibiting discrimination as does the NLRA's duty of fair representation." *Id.* at 234-35.

Plaintiff appears to allege that Defendants violated the HRL, a state statute, by removing him from the Union without notice because of his race and age. *See* Dkt. No. 2 at 8-11. The HRL

16

prohibits labor organizations from "exclud[ing] or expel[ling] from its membership" any individual based on age, race, and other protected characteristics.  N.Y. EXEC. LAW § 296(1)(c).  Although Plaintiff's allegations are within the scope of the state statute, they also fall within the ambit of the Union's duty of fair representation.  *See, e.g.*, *Snay*, 31 F. Supp. 2d at 99-100; *Cole*, 2010 WL 3747591, at *8; *Cabrera*, 436 F. Supp. 2d at 646.  However, consistent with *Figueroa*, the Court does not find any reason why it would be impossible for Defendants to comply with both the HRL and the duty of fair representation.  The Court also agrees with the Second Circuit that the HRL is not an obstacle to the duty of fair representation.  *See Figueroa*, 864 F.3d at 234-35 (citation omitted).  In light of *Figueroa*, the Court holds that Plaintiff's HRL discrimination claims are not pre-empted by the duty of fair representation.  *See Unite Here*, 740 F. Supp. 3d at 377-80 (explaining *Figueroa* and finding state law claims not pre-empted by the duty of fair representation under its standard).

Nevertheless, the Court can exercise supplemental jurisdiction over the HRL claims because they arise from the "'same case or controversy'" and share "a common nucleus of operative fact" with the federal duty of fair representation claim.  *Chompupong v. City of Schenectady*, No. 1:17-CV-929, 2021 WL 1758803, *3 (N.D.N.Y. May 4, 2021) (quoting 28 U.S.C. § 1367(a)) (other citation omitted); *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 28-29 (2025).  Those claims all arise from Defendants' alleged expulsion of Plaintiff from the Union without proper warning.  *See* Dkt. No. 2 at 2-3, 8-11.  Thus, the Court considers the HRL discrimination claims properly removed.

Because federal jurisdiction exists over all claims, Plaintiff's remand motion is denied.

**C.      Plaintiff and Defendants' Motions to Strike Docket Filings**

Plaintiff and Defendants both seek to strike docket filings associated with Defendants' motion to dismiss. Plaintiff asks the Court to strike Defendants' reply in support of their motion to dismiss, *see* Dkt. No. 20, and Defendants ask the Court to strike Plaintiff's sur-reply, *see* Dkt. No. 21.

Defendants' reply was permitted by the Court's briefing schedule. *See* Dkt. No. 13. Nothing in the reply suggests a need to remove it from the docket. *See* Dkt. No. 18. Therefore, Plaintiff's motion to strike the reply is denied.

Plaintiff's sur-reply filed on December 16, 2025, was not permitted by the Court's briefing schedule, nor was he given leave to file it. *See* Dkt. No. 13. As Defendants point out, this Court's Individual Rules and Practices prohibit sur-replies without the Court's leave. *See* Dkt. No. 21 at ¶ 4; Individual Rule 2(C)(iv). However, in January of 2026, the Court granted Plaintiff leave to file a separate sur-reply. *See* Dkt. No. 33. At this stage of the case, because Plaintiff is *pro se* and Defendants have not identified any prejudice in the Court considering the sur-reply, the Court will permit it to remain on the docket. Defendants' motion to strike is denied.

**D.      Defendants' Motion to Dismiss**

### 1.  Duty of Fair Representation

Defendants argue that Plaintiff lacks standing to bring a duty of fair representation claim, and that the claim is untimely. *See* Dkt. No. 13-1 at 19-21. Plaintiff does not refute either argument in his opposition or sur-reply.

Regarding standing, Defendants argue that because Plaintiff was expelled from Union membership, he may not bring a duty of fair representation claim. *See id.* at 19. The complaint was filed in state court more than a year after the Union removed Plaintiff from membership, and Plaintiff does not allege that he rejoined the Union. *See* Dkt. No. 2 at 1-2.

However, regardless of whether Plaintiff was owed a duty of fair representation when he filed suit, his claim is untimely. Defendants correctly state that duty of fair representation claims have a limitations period of six months. *See* Dkt. No. 13-1 at 20; *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 100 (S.D.N.Y. 2011) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983)); *Demchik v. Gen. Motors Corp.*, 821 F.2d 102, 105 (2d Cir. 1987). The claim accrues when the plaintiff first knows, or reasonably should know, that a breach of the duty occurred. *See Demchik*, 821 F.2d at 105 (citation omitted). Based on the complaint, Plaintiff had notice of a potential breach on or about May 27, 2023, when Defendant Guynup told him he was "blocked" from paying dues and was terminated from Union membership. Dkt. No. 2 at 1-2. Thus, the six-month limitations period would have run in November of 2023. Plaintiff has not invoked any toll on the statute of limitations. Because Plaintiff did not file suit until October of 2024, his duty of fair representation claim is dismissed as time-barred.

### 2. *Retaliation and Breach of Contract*

As described above, Plaintiff's retaliation and breach of contract claims are completely pre-empted by the LMRA. Courts in this Circuit have indicated that dismissal is appropriate for such pre-empted state law claims. *See, e.g.*, *Wilson v. Int'l Alliance of Theatrical Stage Emps. Loc. 52*, No. 25-CV-2907, 2026 WL 1110227, *8, *16 (E.D.N.Y. Apr. 24, 2026) (dismissing a state law retaliation claim as pre-empted by § 301); *Control Network Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 236*, 145 F. Supp. 3d 161, 165-67 (N.D.N.Y. 2015) (dismissing a fraud claim as pre-empted by § 301). Thus, dismissal of the retaliation and breach of contract claims is warranted.

The Court notes that, in his opposition and sur-reply, Plaintiff attempts to change the legal theories underlying his claims. "In deciding a motion to dismiss, the court may consider

19

documents attached to, or incorporated by reference in[,] the [c]omplaint, and matters of which judicial notice may be taken[.]" *Nat'l Rifle Ass'n of Am. v. Cuomo*, 480 F. Supp. 3d 404, 410 (N.D.N.Y. 2020) (citation and internal quotation marks omitted). It may also consider documents integral to the complaint. *See id.* (citation omitted). "[A] complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Sibley v. Watches*, 460 F. Supp. 3d 302, 317 (W.D.N.Y. 2020) (citations and internal quotation marks omitted). However, when a *pro se* plaintiff attempts to amend his factual allegations through subsequent briefing, at least one judge in this District has suggested considering those changes, "to the extent [they] are consistent with the allegations of the plaintiff's complaint[,]" as an act of special solicitude. *Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 (N.D.N.Y. 2009). This allowance does not exempt *pro se* plaintiffs from Rule 8, *see id.* at 55, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" FED. R. CIV. P. 8(a)(2).

Despite originally asserting the breach of contract claim under state law, *see* Dkt. No. 10-2 at 1-2, and renewing that contention in his sur-reply, *see* Dkt. No. 19 at 1, Plaintiff claims in his opposition papers that the breach of contract claim arises under § 301 of the LMRA, *see* Dkt. No. 17 at 1, 3. This is a conclusory legal argument, not a factual amendment. Moreover, because the argument is wholly inconsistent with Plaintiff's vehement insistence at the pleading and removal stages that his claims arise only under state law, *see* Dkt. No. 10-2 at 1-2, the Court declines to consider it any further.

The same conclusion is warranted for the retaliation claim. Although Plaintiff originally made that claim under state law, *see* Dkt. No. 10 at 2-3; Dkt. No. 10-2 at 1-2, his opposition brief summarily states that it arises under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), *see* Dkt. No. 17 at 1, and his sur-reply invokes 42 U.S.C. § 1983, *see* Dkt. No.

19 at 1. Once again, these are conclusory legal arguments that entirely contradict Plaintiff's original contentions that his claims arise solely under state law.

Ultimately, the Court dismisses Plaintiff's breach of contract and retaliation claims because they are pre-empted by the LMRA.

### 3. Age and Race Discrimination

As explained, the Court has supplemental jurisdiction over Plaintiff's HRL age and race discrimination claims. Despite his remand motion's firm insistence that both discrimination claims arise under the HRL, *see* Dkt. No. 10-2 at 2, his opposition and sur-reply papers contend that the race discrimination claim arises under Title VII of the Civil Rights Act of 1964, *see* Dkt. No. 17 at 1, 3, and 42 U.S.C. § 1981, *see* Dkt. No. 19 at 1, and his age discrimination claim arises under the LMRA, LMRDA, and HRL, *see* Dkt. No. 17 at 3; Dkt. No. 19 at 1.

Because Plaintiff's sudden reliance on a swath of federal statutes occurs outside of his complaint and blatantly contradicts his earlier position that only state law claims comprise this action, the Court does not consider the merits of the newly asserted claims. *See* Dkt. No. 10 at 2-3; Dkt. No. 10-2 at 1-2. Moreover, with all of the federally pre-empted claims dismissed, the Court declines to decide the merits of the remaining state law discrimination claims. *See Sedor v. Town of Owasco*, No. 5:18-CV-322, 2018 WL 3559074, *5 (N.D.N.Y. July 24, 2018) (dismissing state law claims in a removed action after dismissal of all federal claims); *see also* 28 U.S.C. § 1367(c)(3); *Lomtevas v. City of Schenectady*, No. 1:25-CV-1067, 2026 WL 1601451, *7 (N.D.N.Y. June 4, 2026) (citing *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006); *Lall v. N.Y.C. Hous. Auth.*, No. 24-CV-3237, 2025 WL 2962954, *2 (2d Cir. Oct. 21, 2025) (summary order)).

Accordingly, Plaintiff's race and age discrimination claims are dismissed.

21

**E.      Plaintiff's Motions to Strike Defendant Guynup from the Case Caption**

Plaintiff filed two motions to strike Defendant Guynup from the case caption, asserting that she is not a party to this action. *See* Dkt. Nos. 16, 27. Because the complaint is dismissed in its entirety, these motions are denied as moot.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion to remand (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss[6] (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to strike Defendants' reply in support of the motion to dismiss (Dkt. No. 20) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to strike Plaintiff's sur-reply in opposition to the motion to dismiss (Dkt. No. 21) is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' motions to strike Defendant Guynup from the case caption (Dkt. Nos. 16, 27) are **DENIED as moot**; and the Court further

---

[6] Plaintiff's duty of fair representation claim is dismissed with prejudice because it is untimely. The retaliation, discrimination, and breach of contract claims are dismissed without prejudice and with leave to amend because Plaintiff, who is *pro se*, has not yet filed an amended complaint. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Likewise, dismissal on jurisdictional grounds is without prejudice. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017). Plaintiff is cautioned that if he chooses to file an amended complaint, it must comply with the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8(a). It is not appropriate to modify existing claims or add new claims through motion practice. *See Sibley*, 460 F. Supp. 3d at 317. All filings must also comply with the Court's Local Rules and the undersigned's Individual Rules.

**ORDERS** that Plaintiff may file an amended complaint within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that if Plaintiff fails to file an amended complaint within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 30, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

23